IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERNIE PEREZ,

        Plaintiff,

   v.

MARK NOOTH, BRAD CAIN, JUDY GILMORE, THOMAS JOST, WILLIAM KING, MATTHEW BARBA, ISABEL RODRIGUEZ, and JOSEF BROWN,

        Defendants.

No. 2:18-cv-01244-HZ

OPINION & ORDER

Ernie Perez
Snake River Correctional Institution
777 Stanton Boulevard
Ontario, OR 97914

    Pro Se Plaintiff

1 – OPINION & ORDER

Ellen Rosenblum
Attorney General
Michael R. Washington
Senior Assistant Attorney General
OREGON DEPARTMENT OF JUSTICE
1162 Court Street NE
Salem, OR 97301

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

Pro Se Plaintiff Ernie Perez brings this civil rights action under 42 U.S.C. § 1983 against Defendants Mark Nooth, Brad Cain, Judy Gilmore, Thomas Jost, William King, Matthew Barba, Isabel Rodriguez, and Josef Brown. Plaintiff alleges Defendants violated his Eighth Amendment rights in denying Plaintiff a decontamination shower for nearly two hours after direct exposure to OC spray. Plaintiff also alleges that Defendants Nooth, Cain, Gilmore, Jost, King and Rodriguez violated his Eighth Amendment rights in failing to provide him with a cold-water shower. Plaintiff and Defendants now move for summary judgment. For the reasons below, the Court denies Plaintiff's motion and grants in part and denies in part Defendants' motion.

## BACKGROUND

Plaintiff entered the custody of the Oregon Department of Corrections ("ODOC") on April 27, 2006, and has been housed at Snake River Correctional Institution ("SRCI") since August 26, 2010. Rodriguez Decl. ¶ 3, ECF 66. At the time of the events at issue here, Defendants Barba, Rodriguez, and Brown were correctional officers employed at SRCI working in the Disciplinary Segregation Unit ("DSU"). Third Am. Compl. ("TAC") ¶ 8. Defendant King was a correctional lieutenant, and Defendant Jost was the correctional captain responsible for the SRCI Special Housing Unit. TAC ¶¶ 6–7. Defendant Gilmore was the Assistant Superintendent

of SRCI, and Defendant Cain was the Superintendent. TAC ¶¶ 4–5. Defendant Nooth was the East Side Institutions Administrator for ODOC. TAC ¶ 3.

At approximately 4:55 PM on March 29, 2018, Plaintiff was directly sprayed with chemical agents—"OC spray" or "pepper spray"—by Defendants Rodriguez and Barba in order to stop a physical altercation between Plaintiff and his cellmate in the SRCI DSU. TAC ¶¶ 10–17; Rodriguez Decl. Att 2 at 8. Plaintiff was sprayed in the face and torso at close range, causing him "blazing pain" and difficulty breathing and seeing. TAC ¶¶ 17–18; Barba Decl. ¶ 5. Defendants Rodriguez and Barba recall that Plaintiff had to be sprayed multiple times with two entire cans OC spray before he would stop his assaultive behavior. Rodriguez Decl. ¶¶ 4–6; Barba Decl. ¶ 5. Ultimately, Plaintiff submitted to restraints and was put in the "black box," where he was given a wet towel. TAC ¶¶ 18–19. Plaintiff was then taken to an intake cell, where he was provided additional wet rags. TAC ¶ 21. He was also seen by a medical professional, provided clean clothing, and observed for 30 minutes to ensure he had not had an adverse reaction to the spray. Rodriguez Decl. ¶ 4. Plaintiff was then escorted to an eye-wash station, where the cool water eased some of his his pain as he washed his face. TAC ¶ 22. After returning to the intake cell, however, his body continued to burn. TAC ¶ 23.

After waiting half an hour in the intake cell, Plaintiff began shouting that he needed a shower and that his skin was burning. TAC ¶ 24. According to Plaintiff, Defendant Brown responded that they would "be [t]here soon." TAC ¶ 24. Plaintiff alleges that over an hour later Defendant Rodriguez escorted Plaintiff to the DSU shower. TAC ¶ 25; Rodriguez Decl. ¶ 6–7. Records of the incident show Plaintiff was allowed to shower at 6:00 PM. Rodriguez Decl. Att. 2 at 8. Plaintiff's cellmate—who had "min[imum] contact with OC spray"—was offered a shower forty minutes earlier at 5:20 PM, but he refused. *Id.* at 9.

Plaintiff was escorted to the "handicap shower closet" so he would have more room to shower. TAC ¶¶ 25–26; Rodriguez Decl. ¶ 6. Plaintiff had no choice but to shower in hot water, which cased a "really bad reaction" and uncontrollable burning. TAC ¶ 28. Plaintiff remained in the shower stall for 45 minutes even though his shower only lasted for a short time. TAC ¶ 32. At some point, Plaintiff shouted that his skin was burning and he needed a cold shower. TAC ¶ 29.

Defendant Rodriguez and another officer eventually escorted Plaintiff back to his cell. TAC ¶ 32. Plaintiff again asked for a cold shower, but Defendant Rodriguez informed Plaintiff that the showers were set to hot and could not be changed. TAC ¶ 32; Rodriguez Decl. ¶ 6. Plaintiff was in terrible pain when he returned to his cell and had a difficult time walking, sitting, and sleeping. TAC ¶¶ 33–34. The next time Plaintiff showered, he "was again blinded and experienced mild burning" because of the OC spray. TAC ¶ 36.

Plaintiff filed a grievance regarding this incident on April 1, 2018. TAC Ex. 1 at 6. In his grievance, Plaintiff alleged inadequate decontamination and specifically requested Defendants "provide [a] cold shower option." *Id.* Defendant King responded to Plaintiff's grievance a few weeks later. *Id.* at 7. In his response, he noted that prison staff do not control water temperature and "each individual reacts differently to chemical agents." *Id.* Plaintiff appealed this response, noting that the hot water caused him a "really bad reaction." *Id.* at 8. Defendant Gilmore—on behalf of Defendant Cain—responded that "[t]he showers are temperature controlled and staff do not have the option of adjusting the temperature of the showers." *Id.* at 9. Plaintiff filed a second appeal. *Id.* at 10. Defendant Nooth responded, concurring with Defendant Gilmore's decision and finding "insufficient evidence to support [Plaintiff's] claim." *Id.* at 11.

///

4 – OPINION & ORDER

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

///

///

## DISCUSSION

Plaintiff brings his claims under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

"To state a claim under § 1983, a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Plaintiff and Defendants both move for summary judgment on all three of Plaintiff's Eighth Amendment claims. In his first claim, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in delaying his decontamination shower. TAC ¶ 39. In his second claim, Plaintiff alleges that Defendants Rodriguez, Cain, Jost, Nooth, Gilmore, and King were deliberately indifferent to Plaintiff's serious medical needs in denying Plaintiff a cold-water shower. TAC ¶ 40. In his third and final claim, Plaintiff asserts that Defendants Cain, Jost, Nooth, Gilmore, and King were deliberately indifferent to a deprivation of the minimal civilized measure of life's necessities when they failed to provide adjustable hot- and cold-water controls for the showers in the DSU. TAC ¶ 41.

The Court finds that summary judgment is inappropriate on Plaintiff's first Eighth Amendment claim against Defendants Brown, Barba, and Rodriguez. However, the Court grants Defendants' summary judgment motion on Plaintiff's first claim against Defendants Cain, Jost, Nooth, Gilmore, and King because Plaintiff has not provided evidence of their supervisory liability. The Court also grants Defendants' motion for summary judgment on Plaintiff's second

and third claims for relief. Defendants are entitled to qualified immunity on these claims because Plaintiff did not have a clearly established Eighth Amendment right to a cold-water decontamination shower at the time of the incident underlying this case. Accordingly, the Court denies Plaintiff's motion and grants in part and denies in part Defendants' motion.

**I.      First Claim for Relief**

In Plaintiff's first claim, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. TAC ¶ 39. First, Plaintiff argues that Defendants Brown, Barba, and Rodriguez were deliberately indifferent to his medical needs because they "made [him] wait for a decontamination shower." Pl. Resp. Defs. Mot. 3; Pl. Mot. Summ. J. 17. Second, Plaintiff argues that the remaining Defendants are liable in their supervisory capacities, arguing there is an "unwritten policy or custom of SRCI officials being deliberately indifferent to staff using the painful effects of pepper spray against inmates other than to gain immediate control of inmates." Pl. Mot. Summ. J. 20; Pl. Resp. Defs. Mot. 5–7. The Court addresses each part of Plaintiff's first claim in turn.

**A.      Deliberate Indifference**

A prison official violates an inmate's Eighth Amendment rights if they are "deliberately indifferent" to the inmate's "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). Thus, to establish an Eighth Amendment claim, Plaintiff must show: (1) that he had a "serious medical need" and (2) that Defendants were deliberately indifferent to that need. *Id.* at 104. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain[.]" *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotations omitted).

Deliberate indifference may be satisfied by showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974 F.2d at 1059). For Plaintiff to succeed, he must show Defendants acted with more than "[m]ere negligence." *Clement*, 298 F.3d at 904 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)). Rather, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Id.*

In *Clement v. Gomez*, bystander inmates were exposed to pepper spray vapors when officers administered pepper spray in a neighboring cell to stop a violent fight. 298 F.3d at 902. Prison officials did not provide the bystander inmates with decontamination showers until four hours after the incident. *Id.* The defendants moved for summary judgment on the plaintiffs' Eighth Amendment claims, arguing that they were not deliberately indifferent to the bystander inmates' serious medical needs. *Id.* at 901. The Ninth Circuit first found that the plaintiffs' submissions—which documented the painful effects of pepper spray—satisfied the objective component of the Eighth Amendment test by demonstrating the presence of a serious medical need. *Id.* at 904. The court then found that the plaintiffs might be able to show that the defendants were subjectively aware of the risk of serious injury and therefore deliberately

8 – OPINION & ORDER

indifferent in denying the plaintiffs showers and medical attention during the four-hour period. *Id.* at 905. The court emphasized that the officers were coughing and stepped outside for fresh air, and that the prisoners alleged that they made repeated requests for attention; were coughing, gaging, and choking; and complained of breathing problems, pain, and asthma attacks. *Id.* at 905. The court therefore concluded the defendants were not entitled to summary judgment on the plaintiffs' Eighth Amendment claims.

On this record, the Court cannot grant either party's motion for summary judgment on Plaintiff's first Eighth Amendment claim against Defendants Brown, Barba, and Rodriguez. On one hand, a reasonable jury could find that these Defendants were not deliberately indifferent to Plaintiff's serious medical needs. Within thirty minutes of being directly exposed to OC spray, Plaintiff was allowed to flush his eyes, provided clean clothes, and given wet towels. Rodriguez Decl. Att 2 at 8. He was also observed by a nurse to ensure that he did not have an adverse reaction to the OC spray. *Id.* at ¶ 4, Att. 2 at 8. According to prison records, Plaintiff was provided a shower just over an hour after he was sprayed. *Id.* These various decontamination measurers—which were made available to Plaintiff soon after his exposure—suggest that Defendants were not deliberately indifferent to Plaintiff's serious medical needs. *Cf. Clement*, 298 F.3d at 902 (finding prison officials may have been deliberately indifferent to the plaintiffs' medical needs where decontamination showers were not given to the plaintiffs until four hours after their secondary exposure).

On the other hand, a reasonable jury could conclude that Defendants were deliberately indifferent to Plaintiff's serious medical needs. When Defendants Barba and Rodriguez were unable to stop Plaintiff from assaulting his cellmate, Defendant Barba sprayed Plaintiff in the face and torso with two cans of OC spray. Rodriguez Decl. ¶¶ 4–6; Barba Decl. ¶ 5. Plaintiff

repeatedly yelled out that he was in pain and needed a shower while he was in the intake cell. TAC ¶ 24. Defendant Brown responded to Plaintiff that someone would be there soon. TAC ¶ 24. But Plaintiff waited for at least an hour from his initial exposure for a decontamination shower. TAC ¶¶ 24–25, 27; Rodriguez Decl. ¶ 4, Att. 2 at 8. And Plaintiff's cellmate—who, according to prison records, had "min[imum] contact with OC spray"—was offered and refused a shower 40 minutes earlier. Rodriguez Decl. Att. 2 at 9. Thus, viewing the record in the light most favorable to Plaintiff, a reasonable jury could conclude Defendants Barba, Rodriguez, and Brown were all aware of the extent of Plaintiff's exposure and pain but left him to wait for further decontamination even though an earlier shower may have been possible. Accordingly, the Court denies Plaintiff's and Defendants' motions for summary judgment on Plaintiff's first claim against Defendants Brown, Barba, and Rodriguez.

### B. Supervisory Liability

"[F]or a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable if there exists *either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987)) (emphasis added). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr v. Baca*, 652 F.3d 1202,

1207–08 (9th Cir. 2011)). Thus, "'[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991) (internal citations and quotations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

For example, in *Clement*, the circuit court concluded that a failure to institute adequate prison policies can lead to liability where it "'reflects a deliberate or conscious choice' to 'follow a course of action . . . from among various alternatives.'" *Clement*, 298 F.3d at 905 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). Specifically, the court held that the plaintiffs must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." *Id.* (internal citations and quotations omitted). On the record before it, the court found that a factfinder could find that the supervisors and policymakers were "on actual or constructive notice of the need to train," noting "[t]he plaintiffs' submissions recite[d] numerous instances of the use of pepper spray that allegedly harmed uninvolved bystander inmates." *Id.*

Here, Plaintiff has not demonstrated that the Defendants Nooth, Cain, Gilmore, Jost or King (the "Supervisory Defendants") knew of or acquiesced to the alleged unconstitutional policy or custom that caused the delayed decontamination in this case. Specifically, Plaintiff has not provided evidence that the Supervisory Defendants were on actual or constructive notice of an alleged "widespread unwritten policy or custom" of using the painful effects of pepper spray against inmates in retaliation for misconduct. Pl. Resp. Defs. Mot. 5. Plaintiff argues that Defendants' knowledge of and acquiescence to this unlawful policy or custom is demonstrated by: (1) Defendant Cain's acceptance of the Unusual Incident Report ("UIR"), which purportedly documents a fictitious version of the events in question wherein Plaintiff was punished by being left in wrist restraints until he unequivocally agreed to comply with staff orders; (2) Defendants Nooth, Gilmore, and King's alleged indifference to Plaintiff's pain and suffering in their responses to Plaintiff's grievance regarding the temperature of the shower; and (3) SRCI officials "routine[] disregard" for their own clear regulations and policies. Pl. Mot. Summ. J. 21; Pl. Resp. Defs. Mot. 5–7. But even viewed in the light most favorable to Plaintiff, the record does not demonstrate a widespread custom or policy of using delayed decontamination to retaliate against inmates and cause them additional pain and suffering. Nor does Plaintiff provide any evidence in support of his allegation that SRCI officials routinely disregarded SRCI decontamination policy. Accordingly, Plaintiff's first claim is dismissed against Defendants Cain, Jost, Bell, Gilmore, Nooth, and King.

## II.     Second & Third Claims for Relief

In Plaintiff's second and third claims for relief, Plaintiff alleges Defendants violated his Eighth Amendment rights in failing to provide cool running water for his decontamination shower. In his second claim, Plaintiff alleges that Defendants Nooth, Cain, Gilmore, Jost, King,

and Rodriguez were deliberately indifferent to Plaintiff's serious medical need for a therapeutic cold-water shower. TAC ¶ 40. In his third claim, Plaintiff asserts that Defendants Nooth, Cain, Gilmore, Jost, and King were deliberately indifferent to the deprivation "of the minimal civilized measure of life's necessities of proper shelter, sanitation, and medical care" through their "policy or custom of refusing to provide adjustable hot and cold water controls in the SRCI DSU showers."[1] TAC ¶ 41.

Defendants move for summary judgment on both claims, arguing that Defendants are entitled to qualified immunity because Plaintiff's right to a cold-water shower was not clearly established at the time of the incident in question. Defs. Mot. Summ. J. 16, ECF 64. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When analyzing a qualified-immunity question, the court applies a two-step process. First, a court "must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Id*. at 232. "Second . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

---

[1] In his briefing, Plaintiff appears to reframe his third claim for relief. In addition to seeking relief for the hot-water shower provided to him in 2018, Plaintiff asks this Court to find that the modifications prison officials have made to SRCI since this incident are constitutionally inadequate. Pl. Mot. Summ. J. 24–25; Pl. Resp. Defs. Mot. 12. Specifically, he argues that "two [cold-water] showers per each of the three DSU units is simply not enough" in light of the frequency of riots and brawls at SRCI. Pl. Mot. Summ. J. 25. The Court declines to expand the scope of Plaintiff's third claim for relief to include the constitutional adequacy of subsequent modifications to the showers in SRCI.

13 – OPINION & ORDER

Courts have discretion regarding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Courts "'do not require a case directly on point'" to defeat a claim of qualified immunity, "'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id*. (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)); *see also Greisen v. Hanken*, 925 F.3d 1097, 1108–09 (9th Cir. 2019). In conducting this analysis, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id*. (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)); *see also City of Escondido, Cal. v. Emmons*, 139 S.Ct. 500, 503 (2019).

The Court finds that Defendants are entitled to summary judgment on Plaintiff's second claim for relief. In *Garcia v. Pope*, the district court was presented with a similar Eighth Amendment claim. 2:18-cv-01573-MC, 2020 WL 1068239, at *2 (D. Or. March 5, 2020). There, the plaintiff alleged that the defendants were deliberately indifferent to the plaintiff's health and safety when they exposed him to a warm-water decontamination shower. *Id.* at *1. The defendants argued that qualified immunity defeated the plaintiff's claim, and the court agreed, finding that "no controlling or even persuasive authority has held that warm-water decontamination showers constitute deliberate indifference." *Id.* at *2. The court further noted that "most courts addressing this issue have rejected claims of deliberate indifference arising from a warm or hot decontamination shower." *Id.* (citing cases from the Southern District of

New York, Southern District of Ohio, District of Maryland, Western District of Virginia, Central District of California, Eastern District of Virginia, Eastern District of North Carolina, and the Southern District of California). And "[i]n the few cases denying qualified immunity, the inmates were subjected to additional conditions that exacerbated their pain and discomfort." *Id.* at *3 (citing cases from the Southern District of West Virginia and the Eastern District of California where the plaintiff was subjected to "excessively hot water" and was denied medical assistance or moved to solitary confinement without fresh clothing or bedding). Because the plaintiff in *Garcia* "[did] not allege any disregard to his health or safety aside from the warm water," was provided other methods of decontamination, and was not forced to take a shower, the court concluded that "it was not clearly established that [the] plaintiff's Eighth Amendment rights would be violated by exposure to a warm decontamination shower." *Id.* at *3.

Turning first to Plaintiff's claim against Defendant Rodriguez, the Court finds that Defendant Rodriguez is entitled to summary judgment. Though Defendant Rodriguez may have been deliberately indifferent to Plaintiff's serious medical needs in delaying Plaintiff's decontamination shower, a reasonable jury could not conclude that Defendant Rodriguez was deliberately indifferent to Plaintiff's serious medical needs in providing Plaintiff with a hot decontamination shower instead of a cold decontamination shower. At the time of this incident, the showers in the DSU at SRCI were set to a specific temperature. Pl. Mot. Summ. J. Ex. 3 at 4 (Cain Interrogatory Resp. 2) ("At the time of the incident subject to this lawsuit, . . . the SHU showers water temperature was in between 100 and 120° F."), ECF 69. It is undisputed that Defendant Rodriguez could not control the temperature of the water. *See id.*; Rodriguez Decl. ¶ 6. Given the constraints facing Defendant Rodriguez, her failure to provide Plaintiff with a cold-water shower could not have been wanton. Thus, Plaintiff has not made out a violation of

15 – OPINION & ORDER

the Eighth Amendment against Defendant Rodrgieuz. *See Clement*, 298 F.3d at 904 (finding that to succeed on a claim for deliberate in difference "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official").

As to the claims for relief against Defendants Nooth, Cain, Gilmore, Jost, and King, the Court finds that these Defendants are entitled to qualified immunity. As noted by the district court in *Garcia*, it was not clearly established that Plaintiff's Eighth Amendment rights would be violated by exposure to a warm decontamination shower at the time of this incident. And Plaintiff has not demonstrated that Defendants Nooth, Cain, Gilmore, Jost and King are otherwise liable for subjecting Plaintiff to any additional conditions that exacerbated Plaintiff's discomfort in violation of Plaintiff's Eighth Amendment rights. *See supra* Part I(B). As the hot-water shower claims are the sole deliberate indifference claims remaining against these Defendants, the Court finds that Defendants Nooth, Cain, Gilmore, Jost, and King are entitled to qualified immunity on Plaintiff's second claim for relief.

Defendants Nooth, Cain, Gilmore, Jost, and King are also entitled to summary judgment on Plaintiff's third claim for relief. Citing *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986), Plaintiff alleges that Defendants' failure to provide Plaintiff with a cold-water shower amounts to deliberate indifference to a denial of the "minimal civilized measure of life's necessities of proper shelter, sanitation, and medical care" in violation of the Eighth Amendment. TAC ¶ 41; Pl. Mot. Summ. J. 24. To succeed on such an Eighth Amendment claim, "the plaintiff must prove a denial of the minimal civilized measure of life's necessities occurring through deliberate indifference by prison personnel or officers." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (internal citations and quotations omitted). A prison official violates the Eighth Amendment

16 – OPINION & ORDER

when: (1) the deprivation alleged is "objectively, sufficiently serious" and (2) the "prison official [has] a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)). "When determining whether the deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation." *Edwards v. Gower*, No. 1:13-CV-02030-BR, 2015 WL 3893265, at *2 (D. Or. June 24, 2015), aff'd, 696 F. App'x 255 (9th Cir. 2017)

The Court has not found any case that clearly establishes that the deprivation of a cold-water shower under these circumstances amounts to the deprivation of a basic necessity in violation of the Eighth Amendment. *Cf. Doster v. Beard*, 1:15-cv-01415-DAD-GSA-PC, 2018 WL 2762054, at *11 (E.D. Cal. June 8, 2018) ("Plaintiff has not shown that he suffered deprivations denying the minimal civilized measure of life's necessities. While it was inconvenient and more uncomfortable to take cold showers for two months, Plaintiff's deprivation, without more, was not sufficiently serious to satisfy the objective component of an Eighth Amendment claim."). And the case that Plaintiff cites to support his claim does not clearly establish the alleged Eighth Amendment right at issue here. Rather, in *Toussaint*, the Ninth Circuit upheld a permanent injunction requiring adjustable-temperature valves in prison segregation showers because it would help "reduce the adverse effects of confinement in a filthy environment," thereby protecting the plaintiffs' interest in proper shelter, sanitation, and medical care. 801 F.2d at 1110–11. It did not clearly establish that failing to provide a shower with adjustable temperature controls to inmates exposed to OC spray would deprive them of their interest in proper shelter, sanitation, and medical care. Accordingly, the Court finds Defendants are also entitled to qualified immunity on Plaintiff's third claim, and the Court grants

17 – OPINION & ORDER

Defendants' motion for summary judgment on Plaintiff's second and third claims for relief and dismisses Defendants Nooth, Cain, Gilmore, Jost, and King from this case.[2]

## CONCLUSION

The Court DENIES Plaintiff's Motion for Summary Judgment [69] and GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment [64]. Plaintiff's second and third claims for relief are dismissed with prejudice, and Defendants Nooth, Cain, Gilmore, Jost, and King are dismissed from this case.

IT IS SO ORDERED.

DATED:＿＿June 5, 2020＿＿＿＿＿．

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
MARCO A. HERNÁNDEZ
United States District Judge

---

[2] Defendants do not address whether Plaintiff's second and third claims should be dismissed to the extent that he seeks declaratory or injunctive relief. *See Hydrick v. Hunter*, 669 F.3d 937, 940–41 (9th Cir. 2012) ("Qualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief."). However, both parties acknowledge cold-water showers are now available in each DSU in SRCI. Pl. Mot. Summ. J. Ex. 2 at 4 (Cain Interrogatory Resp. 2) ("They are now adjustable."), Ex. 7 at 8 (Cain Interrogatory Resp. 2) ("There is a shower on each unit that the water temperature has been made adjustable which is used if an inmate has been sprayed with OC spray."). Accordingly, Plaintiff's claims for declaratory or injunctive relief on this issue are now moot. *See Garcia,* 2020 WL 1068239, at *2 (citing *Already LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)) (finding the plaintiff's claims for declaratory and injunctive relief moot because cold-water showers had been made available in the prison's DSU; *see also Bernhardt v. Cty of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002) ("Although mootness was not raised by the County or briefed by the parties . . . we must raise issues concerning our subject matter jurisdiction sua sponte. This includes mootness." (internal citations omitted)).